UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:15-cv-23887-UU

MANUEL L SALVAREZZA and all others
Similarly situated under 29 U.S.C. 216(b),

    Plaintiff,

v.

KELLEY VENTURES LLC d/b/a KELLEY
COLLISION CENTER, PHOENIX
MOTORS, INC. and KEVIN P. KELLEY,

    Defendants.
_____/

## DEFENDANTS' MOTION FOR RULE 11 AND 28 U.S.C. § 1927 SANCTIONS AGAINST PLAINTIFF AND PLAINTIFF'S ATTORNEYS, AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and Local Rule 7.1, the defendants, Kelley Ventures LLC d/b/a Kelley Collision Center ("Kelley Collision Center"), Phoenix Motors, Inc. ("Phoenix Motors"), and Kevin P. Kelley ("Kelley") (collectively "Defendants"), move for an order dismissing the claims brought by the plaintiff, Manuel L. Salvarezza ("Salvarezza" or "Plaintiff"), and sanctioning Salvarezza and his attorneys, J.H. Zidell, P.A., for filing and pursuing frivolous claims against the defendants. In support, Defendants state as follows:[1]

### BACKGROUND

1.    Kelley Collision Center is a full-service automobile body shop. Salvarezza was a car repair bodyman for Kelley Collision Center from January 9, 2013, through July 6, 2015. *See*

---

[1] The Declaration of Carol MacLean, attached hereto as **Exhibit 1**, is submitted in further support of this motion.

**Exhibit 1**.  On July 6, 2015, after having been out for several days, Salvarezza arrived at work and told his manager that he was not feeling well and would not be working any longer.  Salvarezza then packed up his tools and other belongings and left.  A copy of the Declaration of Antonio Colindres, attached hereto as **Exhibit 2**, is submitted in further support of this motion.

2. Throughout his employment, Salvarezza's compensation was based entirely on commissions.  Salvarezza's commissions were in the form of a flat-rate, a "flagged or billed hour." "Flag hours" were based on a database utilized by auto repair shops and insurance adjusters, which assigned a certain number of pre-determined hours to each job to be performed.  The flag hours did not necessarily reflect the actual time spent completing a job.  Salvarezza's compensation was calculated by multiplying the number of flag hours assigned to the work that he performed times his hourly rate.  Salvarezza was paid based on that calculated amount, even if it took him less (or more) time to complete a job.  In 2013 and 2014, Salvarezza's hourly rate was $16.00 per hour and, in 2015, his hourly rate was $16.50.  *See* **Exhibit 1**.

3. Throughout Mr. Salvarezza's employment, Salvarezza was required to punch in and out on a time clock on a daily basis.  Kelley Collision Center maintained time and pay records for the hours Salvarezza worked based on his punches.  *See* **Exhibit 1**.  The records show that he was paid in excess of one-and-one-half times the minimum wage, with a possible very few exceptions due to time punches missed by Salvarezza.  *See* **Exhibit 1.**

*Salvarezza I*

4. On July 3, 2015, Salvarezza filed a two-count First Amended Complaint in the case style *Manuel Salvarezza v. Kelley Ventures LLC d/b/a Kelley Collision Center, Kelley Collision Center Corporation, Kelley Automotive, Inc., Phoenix Motors, Inc., Michael Moran, Grant*

*Fitzwilliam, and Kevin P. Kelley*, Case No. 15-CV-22465-UU ("*Salvarezza I*").[2]  In *Salvarezza I,* Plaintiff alleged that the defendants failed to pay him time-and-a-half for the hours that he worked in excess of 40 hours a week and that, since at least January 2015, they failed to pay him the federal minimum wage in violation of the Fair Labor Standards Act ("FLSA").

5.  Defendants were served with the Amended Complaint on July 10, 2015. A copy of the Service of Summons is attached as **Exhibit 3.**

6.  On July 29, 2015, undersigned counsel informed Salvarezza's counsel that Salvarezza was paid on a commission basis and was exempt from the overtime pay requirement of the FLSA, pursuant to 29 U.S.C. § 207(i).  Undersigned counsel also provided Salvarezza's counsel with Salvarezza's time and pay records, which showed that he was paid in excess of one-and-one-half times the minimum wage.  A copy of this letter and the corresponding records are attached as **Exhibit 4**.

7.  On August 27, 2015, Defendants offered to pay Salvarezza twice the maximum amount that could be due in minimum wage based on missing time clock punches, plus $1,000.00 for attorney's fees.  *See* **Exhibit 5.**

8.  On October 13, 2015, the Court dismissed *Salvarezza I*, without prejudice, for Plaintiff's failure to comply with its Order of Referral to Mediation or its Order to Show Cause. A copy of the Court's Order is attached as **Exhibit 6**.

### *Salvarezza II*

9.  On October 16, 2015, Salvarezza filed the underlying four-count Complaint, alleging that Defendants: failed to pay him overtime and minimum wage, in violation of the FLSA (Counts I and II); failed to pay him minimum wage, in violation of Florida's Minimum Wage Act

---

[2] Salvarezza filed his original complaint on June 30, 2015, but never served it.

("FMWA") (Count III); and discharged him in retaliation for filing his first lawsuit, in violation of the FLSA (Count IV).  *See* D.E. 1.

10.     On October 26, 2015, the case was transferred back to this Court from the Honorable Lawrence King.  [D.E. 6].

11.     On November 4, 2015, undersigned counsel informed Salvarezza's counsel that, contrary to Salvarezza's allegations, he had not been terminated from employment, but rather, he told his manager that he was not feeling well and voluntarily resigned.  A copy of this letter is attached as **Exhibit 7.**  In the same letter, undersigned counsel, on behalf of Kelley Collision Center, made Salvarezza an unconditional offer of reinstatement, indicating that Salvarezza would be returned to his same position and under the same terms and conditions he had enjoyed when he resigned.  *See* **Exhibit 7.**

12.     Neither Salvarezza nor his counsel responded to this unconditional offer of reinstatement.

13.     Salvarezza's overtime, minimum wage, and retaliation claims against Defendants are frivolous, not warranted by existing law, and lack any evidentiary support.  For the reasons set forth above, and as discussed in more detail in the supporting memorandum of law, Salvarezza and his counsel have violated Federal Rule of Civil Procedure 11 and 28 U.S. C. § 1927, and Defendants, therefore, seek sanctions against both.

WHEREFORE, Defendants respectfully request that Salvarezza's Complaint be dismissed with prejudice and sanctions awarded against Salvarezza and his counsel, J.H. Zidell, P.A., in an amount to be determined by the Court, which amount should include all of Defendants' incurred attorneys' fees and costs.

**Certificate of Compliance with Rule 11 and Local Rule 7.1(a)(3)**

I hereby certify that a copy of this Motion was served upon Salvarezza's counsel more than 21 days before the filing of this motion, in accordance with Federal Rule of Civil Procedure 11. Pursuant to Rule 7.1(a)(3), Local Rules for the U.S. District Court for the Southern District of Florida, I hereby certify that I have conferred with Salvarezza's counsel who refuses to voluntarily dismiss the Complaint and opposes this motion.

**MEMORANDUM OF LAW**

**I.    Salvarezza Was Exempt from the FLSA's Overtime Provision and Had No Good-Faith Basis for Bringing or Pursuing that Claim**

Salvarezza's overtime claim fails because he was properly classified and paid as an overtime-exempt employee pursuant to 29 U.S.C. §207(i).  Generally, an employer must pay its employees overtime compensation of one-and-one-half times the employee's regular rate of pay for hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1); *Klinedinst v. Swift Invs., Inc.,* 260 F.3d 1251, 1254 (11th Cir. 2001).  The FLSA, however, exempts a number of categories of employees from this general overtime requirement.  *See* 29 U.S.C. § 207.  One such exemption is the retail or service establishment exemption.  29 U.S.C. § 207(i).  This exemption provides, in pertinent part, that:

> [n]o employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 206 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services.

29 U.S.C. § 207(i).

The retail or service establishment exemption applies where: (1) the employee was employed by a retail or service establishment; (2) the employee's regular rate of pay was more than one-and-one-half times the minimum hourly wage; and (3) more than half of the employee's compensation comes from commissions. *Lee v. Ethan Allen Retail, Inc.*, 651 F. Supp.2d 1361, 1365 (N.D. Ga. 2009). The determination of whether an employee falls within the scope of a FLSA exemption, ultimately, is a legal question. *See Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 713-14 (1986).

The indisputable facts – which Salvarezza and his counsel knew or should have known upon reasonable inquiry – demonstrate that Salvarezza fell squarely within the retail or service establishment exemption. First, Kelley Collision Center, which services and repairs automobiles, qualifies as a "retail or service establishment." Typically, a retail or service establishment is one that sells goods or services to the general public. *See* 29 C.F.R. § 779.318(a); *see also* 29 C.F.R. § 779.320 (listing repair shops in the non-comprehensive list of retail and service establishments). Second, Salvarezza was paid on a commission basis in the form of a flat-rate, "flag or billed hour" system. And finally, Salvarezza's pay records establish that Salvarezza was paid in excess of one and one-half times the federal minimum wage of $7.25.

The Eleventh Circuit considered an employer's use of a flat-rate commission pay system, like the pay system used by Kelley Collision Center, in *Klinedinst v. Swift Invs., Inc.*, 260 F.3d 1251 (11th Cir. 2001). In *Klinedinst,* the plaintiff was a painter for a repair and body shop. He was compensated for each paint job he performed by multiplying the "flag hours" allotted to the paint labor by his hourly rate. *Id.* 1254-56. The "flag hours" were derived from a database utilized by auto repair shops and insurance adjusters. *Id.* at 1253. The Eleventh Circuit held that this was a commission structure that satisfied the "commission" requirement of the § 207(i) exemption. *Id.*

at 1256. Thus, Kelley Collision Center's commission structure is consistent with industry standards and has been recognized by the Eleventh Circuit as a bona fide commission plan that satisfies the FLSA for purposes of the § 207(i) exemption.

Accordingly, there is no question of fact the three elements necessary to qualify for the § 207(i) exemption are satisfied, and Salvarezza's overtime claim must be dismissed accordingly. *See Henriquez v. Total Bike, LLC*, 13-20417-CIV, 2013 WL 6834656, at \*3 and \*6 (S.D. Fla. 2013) (granting summary judgment in favor of the defendant on 207(i) exemption); *see also Lee v. Ethan Allen Retail, Inc.*, 651 F. Supp.2d 1361, 1365 (N.D. Ga. 2009) (same). Further, because Salvarezza's overtime claim is without basis in law or fact, and was brought in bad faith, Defendants are entitled to sanctions.

## II. Salvarezza's Time and Pay Records Prove that Salvarezza Was Paid at Least the Florida Minimum Wage for All Hours Worked

Salvarezza claims that from January 21, 2015, through the end of his employment, he worked approximately 57 hours per week and that Defendants failed to pay him the federal minimum wage ($7.25) and the Florida minimum wage rate ($8.05) for those hours.[3] This allegation is simply false. Kelly Collision Center paid Salvarezza a flat-rate commission based on the jobs he performed, which was calculated on a weekly basis. Additionally, Salvarezza was required to punch in and out every day using a time clock. The payroll documents provided to Salvarezza's counsel reflected that Salvarezza was properly paid well-above minimum wage for the hours he worked.

---

[3] In his FMWA claim, Salvarezza claims that from November 23, 2009 through present, he worked an average of 33 hours per week and was paid on average of $3.65. *See* D.E. 1, ¶ 31. It appears that Salvarezza's counsel included allegations from another lawsuit, which could not be true in this case. Alternatively, Salvarezza's allegation refutes his FLSA overtime claim. For the purpose of this analyses, we will use the hours and pay identified by Salvarezza in his FLSA minimum wage claim. *See* D.E. 1, ¶ 22.

Further, to the extent that there were a few missed punches that could be questioned, Defendants offered to pay in excess of twice the amount that could be due based on Salvarezza's normal punch times.

Thus, when this action was filed and certainly after Defendants provided Salvarezza's time and pay records on July 29, 2015, both Salvarezza and his counsel knew or should have known upon reasonable inquiry that, with very few arguable exceptions, Salvarezza was properly paid at least the Florida minimum wage for all hours that he worked. Further, because Defendants offered to pay any amounts legitimately at issue, Defendants are entitled to sanctions for their continuing to litigate the minimum wage claims.

### III.    Salvarezza's Retaliation Claim Must Be Dismissed Because He Voluntarily Resigned

Salvarezza's claim for retaliation under the FLSA fails because he voluntarily resigned his employment. In order to establish a *prima facie* case of retaliatory discharge under 29 U.S.C. § 215(a)(3), Plaintiff must prove that he made FLSA-protected statements, he suffered an adverse employment action, and that the adverse action resulted from the protected statements. *Wolf v. Coca–Cola,* 200 F.3d 1337, 1342-43 (11th Cir. 2000). Here, Salvarezza's claim is baseless and unequivocally refuted by the facts.

In his Complaint, Salvarezza alleges that Defendants were served with the complaint in *Salvarezza I* on July 6, 2015, and that he was terminated by "Antonio" the same day. [D.E. 1, ¶¶ 35-36]. In fact, however, Defendants were not served until July 10, 2015, and Salvarezza was not terminated; he voluntarily resigned his employment. Thus, Salvarezza cannot satisfy the second prong of the *prima facie* test because there was no adverse employment action. *See MacLean v. City of Petersburg*, 194 F. Supp.2d 1290, 1300 (M.D. Fla. 2002) (holding that plaintiff's voluntary resignation was not an adverse employment action). Furthermore, Salvarezza

8

cannot satisfy the third prong because Defendants were first served in this matter on July 10, 2015, after Salvarezza voluntarily resigned on July 6, 2015, and "Antonio" had no knowledge of Salvarezza's complaint at the time Salvarezza resigned. Thus, even if Kelley Collision Center had terminated Salvarezza, it could not have resulted from Salvarezza's filing an FLSA complaint.[4]

Accordingly, because Salvarezza cannot establish a *prima facie* case of retaliation, his claim fails and must be dismissed. Further, because that claim is without basis in law or fact, and was brought in bad faith, Defendants are entitled to sanctions.

### IV.   Salvarezza and His Counsel Should Be Sanctioned Under Rule 11 and § 1927

#### A.   Legal Standard for Imposing Rule 11 Sanctions

The goal of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and deter costly meritless maneuvers." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001) (*citing Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir. 1987)). Rule 11(b) states:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . .

Rule 11(b) imposes a duty upon attorneys and parties to refrain from filing or pursuing frivolous claims. *Ruszala v. Walt Disney World Co.*, 132 F. Supp.2d 1347, 1351 (M.D. Fla. 2000).

---

[4] Moreover, on November 4, 2015 – after Salvarezza had already filed two lawsuits against them – Defendants made Salvarezza an unconditional offer of reemployment, further belying his claim of retaliation.

9

Rule 11 sanctions are proper when: (1) the party files a pleading that has no reasonable factual basis; (2) the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) the party files a pleading in bad faith for an improper purpose. *Massengale*, 267 F.3d at 1301; *Worldwide Primates, Inc. v. McGreal*, 87 F.3d 1252, 1254 (11th Cir. 1996).

The objective standard for testing conduct under Rule 11 is the "reasonableness under the circumstances" and "what was reasonable to believe at the time" the pleading was submitted. *Baker v. Alderman,* 158 F.3d 516, 524 (11th Cir. 1998). Courts require a two-step inquiry as to: (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous; that is, whether he would have been aware had he made a reasonable inquiry. *Id.* Although sanctions are not warranted when the claimant's evidence is merely weak but appears sufficient, after a reasonable inquiry, to support a claim under existing law, they are warranted when the claimant exhibits a "deliberate indifference to obvious facts." *Id.*

Furthermore, "[i]f the attorney failed to make a reasonable inquiry, then the court <u>must</u> impose sanctions despite the attorney's good faith belief that the claims were sound." *Worldwide Primates*, 87 F.3d at 1254. The reasonableness of the attorney's inquiry may depend on such factors as how much time for investigation was available to the signer, whether he had to rely on a client for information as to the facts, or whether he depended on forwarding counsel or another member of the bar. *Id.*

Additionally, Rule 11 makes clear the continuing nature of a litigant's and a litigant's attorney's responsibilities:

> [Fed. R. Civ. P. 11] also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable . . .
>
> [A] litigant's obligations with respect to the contents of these papers are not measured solely of the time they are filed with or submitted to the court, but include reaffirming to the court and advocating positions contained in those pleadings and motions after learning that they cease to have any merit.

*Ruszala*, 132 F. Supp.2d at 1352. Hence, Rule 11 sanctions are appropriate when a party pursues a claim after it is no longer tenable in fact or law. *Id.*

As demonstrated herein, Salvarezza and his counsel filed and have continued to pursue an overtime claim against Defendants that has no reasonable factual basis and/or is based on a legal theory that has no reasonable chance of success and cannot be advanced as a reasonable argument to change existing law. Salvarezza and his counsel also filed and pursued a FMWA claim and an FLSA minimum wage claim, despite knowing that those claims are without sufficient evidentiary basis. Finally, Salvarezza and his counsel filed and have pursued a retaliation claim, despite knowing that Salvarezza voluntarily resigned and that this claim is without any factual or legal basis. Thus, Salvarezza's FLSA claims (overtime, minimum wage, and retaliation) and his FMWA claims are objectively frivolous and Salvarezza's counsel would have known this had he made any reasonable inquiry. "Rule 11 sanctions are mandatory when a signed paper is submitted to the court under the aforementioned conditions." *Schramek v. Jones*, 161 F.R.D. 119, 120 (M.D. Fla. 1995).

## V.     Legal Standard for Imposing 28 U.S.C. § 1927 Sanctions

The law that governs counsel's liability for excessive costs is found in 28 U.S.C. § 1927, which provides, in relevant part:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the

> proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  Section 1927 permits courts to "assess attorney's fees against litigants, counsel and law firms who willfully abuse the judicial process by conduct tantamount to bad faith." *Malautea v. Suzuki Motors Co., Ltd.*, 987 F.2d 1536, 1544 (11th Cir. 1993).  A district court's authority to issue sanctions for attorney misconduct under § 1927 is either broader than or equally as broad as the district court's authority to issue a sanctions order under its inherent powers. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180, 1189 (11th Cir. 2006).  Section 1927 is designed to protect defendants from burdensome litigation with insufficient legal or factual basis. *Bruce v. City of Gainesville, Ga.,* 177 F.3d 949, 950-51 (11th Cir. 1999).  In the words of one court of appeals, "[s]uits are easy to file and hard to defend.  The best way to control unjustified tactics in litigation is to ensure that those who create costs also bear them.  When an attorney recklessly creates needless costs, the other side is entitled to relief."  *In re TCI, Ltd.*, 769 F.2d 441, 446 (7th Cir. 1985).

Sanctions under § 1927 are appropriate when the following three elements are present: "First, the attorney must engage in 'unreasonable and vexatious' conduct.  Second, that 'unreasonable and vexatious' conduct must be conduct that multiplies the proceedings.  Finally, the dollar amount of the sanction must bear a financial nexus to the excess proceedings, *i.e.*, the sanction may not exceed the 'costs, expenses, and attorney's fees reasonably incurred because of such conduct.'"  *Amlong & Amlong, P.A.*, 457 F.3d at 1190 (*citing Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir. 1997)).

Section 1927 also has a bad-faith component that requires the party alleged to have committed a sanctionable act to have acted in bad faith for purposes of vexatiously and

unreasonably multiplying the proceedings. *Malautea,* 987 F.2d at 1541. In the Eleventh Circuit, the standard for this bad-faith requirement is an objective standard. *Amlong & Amlong, P.A.*, 457 F.3d at 1191. Thus, "objectively reckless conduct is enough to warrant sanctions even if the attorney does not act knowingly and malevolently." *Id.*

Under § 1927, fees may be awarded in cases lacking in credibility from the outset such as when an attorney fails to adequately investigate the allegations contained in the complaint. *Sullivan v. School Bd. of Pinellas County*, 773 F.2d 1182, 1189 (11th Cir. 1985). Attorneys are not only responsible for investigating the claims in a lawsuit prior to filing, but have a continuing obligation throughout the pendency of the action. *Avirgran v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991) (stating that "[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest"). If evidence becomes known that is contrary to the asserted claim, or it becomes clear that the claim is baseless, attorneys have an obligation to seek voluntary dismissal. *Collins v. Walden*, 834 F.2d 961, 965 (11th Cir. 1987). Moreover, when an attorney is on notice that a claim is without merit, but continues to prosecute nonetheless, the attorney acts in bad faith and risks sanctions. *Stovall v. Price Waterhouse Co.,* 652 F.2d 537, 541-42 (5th Cir. Unit A 1981).

Based on the undisputed facts in this case – which Salvarezza and his attorneys knew or would have known after a reasonable investigation – Salvarezza's claims have no evidentiary support and are not warranted under the law. Particularly, Salvarezza's counsel's conduct in filing and pursuing *Salvarezza II* – after undersigned counsel provided indisputable evidence that Salvarezza's claims had no factual or legal basis – was objectively reckless enough to warrant sanctions even if he did not act malevolently. Accordingly, Salvarezza and his counsel should be

13

sanctioned for filing and pursuing Salvarezza's FLSA (overtime, minimum wage, and retaliation) and FMWA claims against Defendants.

## VI.  Conclusion

Salvarezza's conduct and that of his attorneys, J.H. Zidell, P.A., have required Defendants to defend themselves against claims that, from the outset, lacked any basis in law or fact and should never have been brought.  Salvarezza's attorneys failed to adequately investigate the allegations, thereby multiplying the proceedings and causing Defendants to incur unnecessary fees, costs, and expenses.  Additionally, by filing and not voluntarily dismissing Salvarezza's claims against Defendants after being placed on notice that the claims had no evidentiary or legal basis, Salvarezza and his counsel acted in bad faith and in deliberate indifference to obvious facts.

For these reasons, Defendants ask that the Court dismiss this action with prejudice and assess sanctions against Salvarezza and Salvarezza's attorneys, jointly and severally, including an award to Defendants of all of their costs, fees, and expenses incurred in this matter.

Date:  February 23, 2016                                       Respectfully submitted,

By:  *s/Cathy M. Stutin*
Cathy M. Stutin
Fla. Bar No. 865011
cstutin@laborlawyers.com
Suhaill M. Morales
Fla. Bar No. 84448
smorales@laborlawyers.com
Fisher & Phillips LLP
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, Florida 33301
Telephone (954) 525-4800
Facsimile (954) 525-8739

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on **February 23, 2016**, I electronically filed the **DEFENDANTS' MOTION FOR RULE 11 AND 28 U.S.C. § 1927 SANCTIONS AGAINST PLAINTIFF AND PLAINTIFF'S ATTORNEYS, AND INCORPORATED MEMORANDUM OF LAW** document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day to all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF and/or via U.S. Mail.

*s/Cathy M. Stutin*
Cathy M. Stutin
Fla. Bar No. 865011
cstutin@laborlawyers.com
Suhaill M. Morales
Fla. Bar No. 84448
smorales@laborlawyers.com
Fisher & Phillips LLP
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, Florida 33301
Telephone (954) 525-4800
Facsimile (954) 525-8739

*Attorneys for Defendants*

## **SERVICE LIST**

UNITED STATES DISTRICT COURT - SOUTHERN DISTRICT OF FLORIDA
CASE NO. 1:15-cv-23887-UU

MANUEL L SALVAREZZA v. KELLEY VENTURES LLC d/b/a KELLEY COLLISION CENTER, PHOENIX MOTORS, INC. and KEVIN P. KELLEY,

J.H. Zidell
zabogado@aol.com
Allyson Kutner Morgado
amorgado.jhzidell@gmail.com
Stephen Michael Fox, Jr.
Stephen.fox.esq@gmail.com
J.H. ZIDELL, P.A.
300 71st Street
Suite 605
Miami Beach, FL 33141
Telephone (305) 865-6766
Facsimile (305) 865-7167

*Attorneys for Plaintiff*

Cathy M. Stutin
cstutin@laborlawyers.com
Suhaill M. Morales
smorales@laborlawyers.com
FISHER & PHILLIPS LLP
450 East Las Olas Boulevard
Suite 800
Fort Lauderdale, FL 33301
Telephone (954) 525-4800
Facsimile (954) 525-8739

*Attorneys For Defendants*